IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| JACKELINE QUILES-GONZALEZ<br>IRMA GONZALEZ-RODRIGUEZ<br>EDWIN COLON-DIAZ<br>Plaintiffs<br><br>vs<br><br>UNITED STATES OF AMERICA<br>JOSE SANTIAGO-GONZALEZ<br>DINA AVILA<br>LYNN DOBLE-SALICRUP<br>ROSA EMILIA RODRIGUEZ-VELEZ<br>BANCO BILBAO VIZCAYA ARGENTARIA<br>CITIBANK<br>BANCO POPULAR DE PUERTO RICO<br>BANCO SANTANDER<br>DORAL BANK<br>MR. DIONISIO RIVERA<br>MRS. JOYCE BRUNET-AMADOR<br>and DEFENDANTS X, Y, AND Z<br>Defendants | CIVIL 09-1401CCC |

## OPINION AND ORDER

Pending before the Court are Banco Bilbao Vizcaya-Argentaria (BBVA), Doral Bank (Doral), Banco Santander Puerto Rico (Banco Santander), and Banco Popular de Puerto Rico's (BPPR)[1] (collectively, Defendants) respective Motions to Dismiss (**dockets entries 23, 42, 45 & 50**), and Plaintiffs Jackeline Quiles-González (Quiles), Irma González-Rodríguez (González), and Edwin Colón-Díaz' (Colón) (collectively Plaintiffs) oppositions thereto (dockets entries 36, 49 & 51). BBVA replied to plaintiffs' opposition (docket entry 47), plaintiffs sur-replied (docket entry 56), and BBVA filed a response to plaintiffs' sur-reply (docket entry 57). After reviewing the filings, and the applicable law, defendants' motions to dismiss are **GRANTED**.

---

[1] BPPR filed a motion joining BBVA, Doral, and Santander's motions to dismiss. Docket entry 50.

CIVIL 09-1401CCC                                     2

**Procedural Background**

On April 30, 2009, Quiles and González filed suit against the United States of America ( United States), BBVA, several of BBVA's employees, and other unnamed co-defendants under the Federal Tort Claims Act (FTCA), 28 U.S.C. §2671, et seq., and Article 1802 of the Puerto Rico Civil Code, P.R. Laws Ann tit 31, §5141.  Docket entry 1.  On June 4, 2009, plaintiffs filed an amended complaint, to include Colón as a plaintiff, and asserting claims against Doral, Banco Santander, and BPPR,[2] pursuant to the Right to Financial Privacy Act of 1978 (RFPA), 12 U.S.C. §3401 et seq.  See Docket entry 8.  According to paragraph 3 of the amended complaint, defendants disclosed confidential information without fully complying with RFPA requirements. Specifically, Colón's bank statements with defendants were disclosed to the United States as part of grand jury proceedings held before this District in USA v. Colón-Díaz, et al, Criminal Case No. 05-0194 (DRD).  Plaintiffs aver that the information led to the search and seizure of Colón's store, El Anturión, and to his eventual conviction.  They further allege at paragraph 18 of the amended complaint ¶ 18 that a safe deposit box account registered under González' name was opened by BBVA, and its contents were disclosed to the United States.  As a result, approximately $32,000 and some documents belonging to Colón were subject to forfeiture by the Internal Revenue Service ("IRS") in a parallel case (Case No. 08-0262 (1) (JA)).

On August 26, 2009, BBVA filed a motion to dismiss, alleging that plaintiffs failed to state a claim under the RFPA.  According to BBVA, Quiles lacks standing to file the present claims insofar as she is not a BBVA customer.  Moreover, they aver that Quiles and González cannot state a claim for the disclosure of documents contained in the safe deposit box, belonging to Colón.  BBVA also argues that

---

[2] Although Citibank is named as a co-defendants, it has not been duly served.

CIVIL 09-1401CCC                                    3

Plaintiffs have not shown which financial records were disclosed, to whom they belonged, how the disclosures harmed them, or a causal connection between said disclosures and the alleged harm. BBVA also posits that plaintiffs have not demonstrated that the security box's contents constitute "financial records" under the RFPA. Additionally, BBVA argues that they are entitled to qualified immunity under the Annunzio-Wylie Anti-Money Laundering Act ("Annunzio-Wylie Act"), 31 U.S.C. §5318(g)(3). Specifically, it avers that pursuant to the Annunzio-Wylie Act's safe harbor provision, financial institutions are immune from liability for voluntary disclosures of possible violations of laws or regulations, disclosures based on suspicious transactions, as defined by said Act, and disclosures pursuant to any other authority. BBVA also seeks dismissal of the claims against the individual defendants since the RFPA does not impose civil liability upon individual officers, employees, or agents of financial institutions. Lastly, they argue that plaintiffs' RFPA claims are time-barred.

Plaintiffs opposed, arguing that in order for the Annuncio-Wylie Act's safe harbor provision to apply, defendants must show that the information provided was linked to a crime. Specifically, they aver that defendants must demonstrate that they had a valid suspicion regarding a possible violation of the law and acted in good faith, but failed to meet such burden. They claim that they did not know about the information provided by defendants to the United States until recently and, therefore, their actions are not time-barred. They further contend that plaintiffs have standing to file the instant suit insofar as their claims arise from the disclosure of Colón's bank statements, and the seizure of Quiles and González's safe deposit box. They point out that the controversy "is not the contents of the safety box but the fact that [BBVA] informed [the United States about] the contents of the safety box." Plaintiffs argue that

CIVIL 09-1401CCC                               4

BBVA violated the RFPA and Article 1802 when it opened the safe deposit box and disclosed its contents to the United States.

On September 30, 2009 and October 5, 2009, Doral and Banco Santander respectively filed motions to dismiss, arguing that the claims are time-barred, that plaintiffs lack standing, and that they were entitled to absolute immunity. Docket entries 42 & 45. On October 20, 2009, BPPR joining BBVA, Doral, and Santander's motions to dismiss. Docket entry 50.

**Standard of Review**

*Fed. R. Civ. P. 12(b)(6)*

To survive a Rule 12(b)(6) motion, Plaintiffs' "well-pleaded facts must possess enough heft to show that [they are] entitled to relief." Clark v. Boscher, 514 F. 3d 107, 112 (1st Cir. 2008). In evaluating whether plaintiffs are entitled to relief, the court must accept as true all of their "well-pleaded facts [and indulge] all reasonable inferences therefrom" in the plaintiff's favor. Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007). The First Circuit has held that "dismissal for failure to state a claim is appropriate if the complaint fails to set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Gagliardi v. Sullivan, 513 F. 3d 301, 305(1st Cir. 2008). Courts "may augment the facts in the complaint by reference to documents annexed to the complaint or fairly incorporated into it, and matters susceptible to judicial notice." Id. at 305-306. However, in judging the sufficiency of a complaint, courts must "differentiate between well-pleaded facts, on the one hand, and 'bald assertions, unsupportable conclusions, periphrastic circumlocution, and the like,' on the other hand; the former must be credited, but the latter can safely be ignored." LaChapelle v. Berkshire Life Ins., 142 F.3d 507, 508 (quoting Aulson v. Blanchard, 83 F.3d 1, 3

CIVIL 09-1401CCC					5

(1st Cir.1996)); Buck v. American Airlines, Inc., 476 F. 3d 29, 33 (1st Cir. 2007); see also Rogan v. Menino, 175 F.3d 75, 77 (1st Cir. 1999).

Therefore, "even under the liberal pleading standards of Federal Rule of Civil Procedure 8, the Supreme Court has recently held that to survive a motion to dismiss, a complaint must allege 'a plausible entitlement to relief.'" Rodríguez-Ortíz v. Margo Caribe, Inc., 490 F.3d 92 (1st Cir. 2007) (citing Twombly, 127 S. Ct. at 1965). Although complaints do not need detailed factual allegations, the "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Twombly, 127 S. Ct. At 1965; see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). A plaintiff's obligation to "provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 127 S. Ct. at 1965. That is, "factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all allegations in the complaint are true." Parker v. Hurley, 514 F. 3d 87, 95 (1st Cir. 2008).

**Applicable Law and Analysis**

    **A. Statute of limitations**

The Court first notes that plaintiffs' claims are not time-barred. In the complaint, plaintiffs allege that they learned about the disclosure of Colón's bank account statements less than one year prior to the filing of the instant suit, which is well within the statutory periods under the relevant laws. Specifically, on April 24, 2008, plaintiffs learned that the safe-deposit box at BBVA was opened, and the complaint was filed on April 30, 2009. Thus, the complaint was filed within the one-year statute of limitations for tort claims under Article 1802, and the amended complaint was also filed within the RFPA's three year statute of limitations. 12 U.S.C. §3416. Moreover, in light of the confidentiality of the grand jury proceedings, defendants' arguments that

CIVIL 09-1401CCC                                6

plaintiffs knew about the financial documents used during the same are unreasonable. Additionally, defendants have failed to adequately rebut the facts alleged in the complaint, which regardless is a question of fact better left for a motion for summary judgment.

### B. Claims against Bank Employees

Plaintiffs have acquiesced to the dismissal of their RFPA claims against the bank employees. Therefore, the RFPA claims against Dionisio Rivera, and Joyce Brunet-Amador are **DISMISSED WITH PREJUDICE**. However, they contend that the Article 1802 claims against them remain pending before this Court. Notwithstanding, since all federal claims against the bank employees are dismissed, the supplemental state law claims against said co-defendants are also **DISMISSED, WITHOUT PREJUDICE**.

### C. González and Quiles' RFPA Claims against BPPR, Santander, and Doral

Pursuant to the Amended Complaint, BPPR, Santander and Doral disclosed Colón's bank statements to the United States. However, Quiles and González did not have any accounts with the afore-mentioned banks. Their allegations focus on BBVA's handling of the safe-deposit box. The RFPA provides that any government agency or financial institution that violates the act "is liable to the customer to whom such records relate...." 12 U.S.C. §3417(a). Since Quiles and González are not customers of said banks, and their financial information was not disclosed by said defendants in violation of the RFPA, their claims against BPPR, Santander, and Doral are **DISMISSED WITH PREJUDICE**.

### D. Colón's RFPA claims against BBVA, BPPR, Santander, and Doral

According to the amended complaint, defendants violated the RFPA by disclosing statements to the United States even though the United States had not fully certified that they had complied with Section 3403(b), and other relevant sections of

CIVIL 09-1401CCC                                                          7

the RFPA.  See allegation 3 of the Amended Complaint.  Defendants argue that Colón's bank statements were disclosed as part of grand jury proceedings held in 2004 and, therefore, they have absolute immunity under the Annunzio-Wylie Act.

In 1992, Congress enacted the Annunzio-Wylie Act, 31 U.S.C. §5318(g)(1). The Act, in pertinent part, gave the Secretary of the Treasury authority to "require any financial institution, and any director, officer, employee, or agent of any financial institution, to report any suspicious transaction relevant to a possible violation of law or regulation."  31 U.S.C. §5318(g)(1). Congress sought to "uncover and punish money laundering, particularly in connection with drug trafficking . . ." through both voluntary and required reporting.  Stoutt v. Banco Popular de P.R., 158 F. Supp. 2d 167, 173 (D.P.R. 2001) (citing Nevin v. Citibank, 107 F. Supp. 2d 333, 341 (S.D.N.Y. 2000)).

In order to encourage the reporting of possible violations, the Act incorporated a safe harbor provision which states:

> [A]ny financial institution that makes a voluntary disclosure of any possible violation of law or regulation to a government agency or makes a disclosure pursuant to this subsection or any other authority, and any director, officer, employee, or agent of such institution who makes, or requires another to make any such disclosure, shall not be liable to any person under any law or regulation of the United States, any constitution, law, or regulation of any State or political subdivision of any State, or under any contract or other legally enforceable agreement (including any arbitration agreement), for such disclosure or for any failure to provide notice of such disclosure to the person who is the subject of such disclosure or any other person identified in the disclosure.

31 U.S.C. §5318(g)(3)(A).

In interpreting the Annunzio-Wylie Act's safe harbor provision, the Court of Appeals for the Eleventh Circuit held that it granted immunity from liability for three different types of disclosures: (i) a disclosure of any possible violation of law or regulation, (ii) a disclosure pursuant to section 5318 (g) itself, or (iii) a disclosure pursuant to any other authority.  López v. First Union Nat'l Bank, 129 F.3d 1186, 1191

CIVIL 09-1401CCC                            8

(11th Cir. 1997). However, the court included an additional requirement of "good faith suspicion" before the disclosure of possible violations of law or regulation. Conversely, albeit adopting the classification of the protected disclosures, the Court of Appeals for the Second Circuit held that there was no qualification on the immunity granted by the safe harbor provision of the Annunzio-Wylie Act. Lee v. Bankers Trust Co., 166 F.3d 540, 542-44 (2nd Cir. 1999). Pursuant to Lee, considering the plain meaning of the Act, the immunity granted therein is unambiguous and unqualified, and does not impose a good faith requirement. As such, the court concluded that the immunity conferred by the Annunzio-Wylie Act is absolute, and protects financial institutions from liability due to voluntary as well as involuntary disclosures of financial information.

In 2001, the First Circuit adopted Lee's holding in Stoutt v. Banco Popular de P.R., 320 F.3d 26 (1st Cir. 2003), where the Court affirmed this District's holding that the safe harbor provision "grants absolute immunity from any federal and or state cause of action for disclosure of possible violations of law by a financial institution to the appropriate federal law enforcement agency, excepting a federal Constitutional cause of action." Stoutt, 158 F. Supp. 2d at 173. The Court noted that "[a]ssuredly, under the safe harbor provision, careless or malicious reporting is possible. Thus, the statute, whether read broadly or narrowly, means that some 'wrongs' will go unredressed. But this is neither novel nor decisive: 'rights' are regularly limited or defeated by privileges, immunities and other defenses of many kinds . . . In truth, all 'rights' are limited by countervailing concerns and interests...." Stoutt, 320 F.3d at 33. There is no good faith requirement in the First Circuit and the safe harbor provision of the Annunzio-Wylie Act grants absolute immunity.

The amended complaint alleges that defendants provided Colón's bank statements to the United States as part of a grand jury investigation which culminated

CIVIL 09-1401CCC                                    9

in Colón's indictment in Crim. No. 05-0194 (DRD).  Grand jury subpoenas are "other authority" for purposes of the RFPA.  Coronado v. Bank Atlantic Bancorp, Inc., 222 F.3d 1315 (11th Cir. 2000).  The information disclosed as part of the grand jury proceedings, *i.e.*, Colón's bank statements, is protected activity under the Annunzio-Wylie Act's safe harbor provision insofar as it constitutes a disclosure "pursuant to other authority."  BBVA, BPPR, Santander, and Doral are entitled to absolute immunity regarding the disclosure of Colón's bank accounts.  Plaintiffs' reliance on unsupported conclusions or interpretations of law regarding the United States' non-compliance with Section 3403(b) of the RFPA must be rejected.  Their claim that the United States had not fully complied with the mandates of Section 3403(b), without further factual allegations in support thereof, are insufficient to survive a motion to dismiss under Rule 12(b)(6), more so in light of the fact that the financial information was obtained as part of grand jury proceedings.

For the reasons stated, Colón's RFPA claims against BBVA, BPPR, Santander, and Doral are **DISMISSED, WITH PREJUDICE**.  However, plaintiffs also brought claims against BBVA under Article 1802, premised on the alleged improper entry into González' safe-deposit box and the disclosure of its contents.

**E. Plaintiffs' supplemental Article 1802 claim based on the safe deposit box at BBVA**

Having dismissed plaintiffs' federal claims against BBVA, their state law claims against said co-defendant for the alleged negligent opening and disclosure of the safe-deposit box content are also dismissed.  See Newman v. Burgin, 930 F.2d 955, 963 (1st Cir. 1991) (holding that "[t]he power of a federal court to hear and to determine sate-law claims in non-diversity cases depends upon the presence of at least one 'substantial' federal claim in the lawsuit.")  Therefore, plaintiffs' supplemental state law claims are **DISMISSED, without prejudice**.

CIVIL 09-1401CCC 10

## Conclusion

In light of the above, defendants' Motions to Dismiss (docket entries 23, 42, 45, 50) are **GRANTED**. Plaintiffs' federal law claims against BPPR, Santander, Doral, BBVA, and BBVA's employees are **DISMISSED WITH PREJUDICE**. Also, Plaintiffs' supplemental state law claims are **DISMISSED WITHOUT PREJUDICE.**

SO ORDERED.

At San Juan, Puerto Rico, on March 31, 2010.

S/CARMEN CONSUELO CEREZO
United States District Judge